UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Julie Grupke,<br><br>           Plaintiff,<br><br>-against-<br><br>GFK Custom Research North America,<br><br>           Defendant. | Docket No. 13-cv-913 (PAC) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

 

**LITTLER MENDELSON, P.C.**
Craig R. Benson
Meredith L. Kaufman
900 Third Avenue, 8th Floor
New York, New York 10022
(212) 583-9600

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

    I.     No Genuine Issue Of Material Fact Exists ............................................................... 1

    II.    Plaintiff's FLSA Claim Must Be Dismissed............................................................ 2

           A.     Plaintiff's Primary Duty Was Directly Related To GfK's
Management Or General Business Operations ......................................... 3

                1.     GfK is not in the business of "producing" market research
surveys ........................................................................................... 3

                2.     Plaintiff's primary duty was not production work .......................... 4

                3.     There is no legal support for Plaintiff's position ............................ 5

           B.     Plaintiff's Primary Duty Required the Exercise of Discretion and
Independent Judgment With Respect to Matters Of Significance ............. 6

CONCLUSION ............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Dalheim v. KDFW-TV,*
   918 F.2d 1220 (5th Cir. 1990) .................................................................................... 5, 6

*DiFilippo v. Barclays Capital, Inc.,*
   552 F. Supp. 2d 417 (S.D.N.Y. 2008) ............................................................................ 5

*Goenaga v. March of Dimes Birth Defects Found.,*
   51 F.3d 14 (2d Cir. 1995) ............................................................................................... 2

*Harper v. Gov't Emples. Ins. Co.,*
   980 F. Supp. 2d 378 (E.D.N.Y. 2013) ............................................................. 3, 4, 8, 10

*Hayes v. N.Y. City Dep't of Corr.,*
   84 F.3d 614 (2d Cir. 1996) ........................................................................................ 2, 7

*Hollander v. American Cyanamid Co.,*
   172 F.3d 192 (2d Cir. 1999) ........................................................................................... 2

*Klein v. Torrey Point Group, LLC,*
   2013 U.S. Dis. LEXIS 152875 (S.D.N.Y. Oct. 23, 2013) ............................................. 7

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986) ....................................................................................................... 1

*Reich v. N.Y.,*
   3 F.3d 581 (2d Cir. 1993) ........................................................................................... 5, 6

*Schnabel v. Abramson,*
   232 F.3d 83 (2d Cir. 2000) ............................................................................................. 2

*Schwartz v. York College,*
   2011 U.S. Dist. LEXIS 93495 (E.D.N.Y., Aug. 22, 2011) ............................................ 1

**STATUTES**

FLSA ................................................................................................................................. 2, 5

**OTHER AUTHORITIES**

29 C.F.R. § 541.202(a) .......................................................................................................... 7

29 C.F.R. § 541.202(c) .......................................................................................................... 7

## TABLE OF AUTHORITIES
## CONTINUED

**PAGE(S)**

**CASES**

69 Fed. Reg. 22143 (April 23, 2004) .................................................................................5

## PRELIMINARY STATEMENT

Plaintiff would have this Court believe no discovery transpired in this case. It is not exactly clear why. One would think Plaintiff ignores her deposition transcript and relies exclusively on a single declaration in opposition to this motion in a misguided attempt to recant her prior sworn testimony and create artificial issues of fact. To some extent, this is true. Plaintiff's declaration improperly rewrites history on a few telling points, such as her abrogation of her prior sworn testimony that she was not involved in the production of GfK's market research surveys.

However, Plaintiff's declaration also reiterates many of the key facts that demonstrate the exempt nature of her position at GfK. For example, Plaintiff's declaration reaffirms that she was involved in operational areas of GfK's business, including budgeting, quality control, research and computer network and IT administration, and that she made recommendations to GfK's management on a variety of issues, including business objectives and problem solving, and that she oversaw the implementation of management decisions.

Although Plaintiff's opposition is replete with conclusory allegations regarding the nature of her duties, her conclusions are not borne out by the undisputed facts or even the facts she sets forth in opposition to this motion. Plaintiff's allegations are insufficient to defeat summary judgment, and her Complaint must therefore be dismissed.

## ARGUMENT[1]

### I. NO GENUINE ISSUE OF MATERIAL FACT EXISTS

To defeat GfK's motion for summary judgment, Plaintiff "must come forward with 'specific facts showing there is a genuine issue for trial.'" *Schwartz v. York College*, No. 06 Civ. 6754, 2011 U.S. Dist. LEXIS 93495, at *14 (E.D.N.Y., Aug. 22, 2011) (quoting *Matsushita*

---

[1] The facts detailed herein are accepted as true only for purposes of this motion for summary judgment.

1

*Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Plaintiff has not done so. Rather, she admitted every fact asserted in Defendant's 56.1 Statement ("Def. 56.1"), and the facts asserted in her Counterstatement ("Pl. Counter 56.1") must be disregarded because they lack citations to admissible evidence and are otherwise improper. (*See* Def. Reply 56.1 at 1-4).

Plaintiff endeavors to raise factual disputes by contradicting her deposition testimony in her declaration submitted in opposition to this motion.[2] However, it is well-settled that Plaintiff cannot "create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996). Plaintiff's declaration is also replete with conclusory allegations and improper legal argument, which must be disregarded as well. *See Hollander v. American Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999) (*abrogated on other grounds by Schnabel v. Abramson*, 232 F.3d 83 (2d Cir. 2000) ("a court may ... strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements").

Accordingly, no genuine issue of material fact exists. As discussed below, the undisputed facts, many of which are expressly reaffirmed in Plaintiff's opposition, require a finding that Plaintiff was properly classified as exempt under the administrative exemption.

## II.   PLAINTIFF'S FLSA CLAIM MUST BE DISMISSED [3]

In her opposition, Plaintiff disputes that her primary duty was (1) directly related to the management or general business operations of GfK, and (2) included the exercise of discretion and independent judgment with respect to matters of significance. Her claims are belied by the

---

[2] Plaintiff's memorandum of law also contains assertions of fact. Some of these facts rely on Plaintiff's declaration; many others have no citations at all. (*See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl. Opp.") at 1-3). These "facts" must therefore be disregarded. *See Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).
[3] Plaintiff does not dispute, and therefore concedes, that GfK is exempt from the overtime provisions of the MMWL.

2

undisputed facts, including key admissions in her opposition papers, which demonstrate that her duties with GfK satisfied these two prongs of the administrative exemption test.

### A. Plaintiff's Primary Duty Was Directly Related To GfK's Management Or General Business Operations

Plaintiff seeks to avoid summary judgment by arguing her primary duty was producing GfK's market research products, which she claims would render her non-exempt. As discussed below, her own deposition testimony and opposition papers refute her claim and establish that her primary duty was directly related to GfK's management or general business operations.

#### 1. GfK is not in the business of "producing" market research surveys.

In an attempt to survive summary judgment, Plaintiff argues that GfK was in the business of "producing" market research.[4] (Pl. Opp. at 10). This claim is entirely false. Plaintiff's own deposition testimony demonstrates that GfK did not "produce" market research studies at all. Rather, as she testified, GfK used outside vendors to collect and process the market research data. (Def. 56.1 at ¶80). Plaintiff "was not typically involved in ... producing the reports." (*Id.* at 48). This same position is reiterated in her declaration: "the actual surveys themselves were outsourced to various vendors." (Declaration of Julie Grupke in Opposition to Defendant's Motion for Summary Judgment ("Pl. Dec."), ¶18).

The recent decision *Harper v. Gov't Emples. Ins. Co.*, 980 F.Supp. 2d 378 (E.D.N.Y. 2013) confirms GfK was not in the business of "producing" market research studies. In that case, the plaintiff, a claims adjuster, argued that GEICO was in the business of "handling claims." *Id.* at 381. The Court disagreed, finding it was "clear that GEICO is in the business of selling insurance" and opining as follows:

---

[4] Plaintiff has also claimed that GfK is in the "business of market research," the "business of selling market research," and the "business of research." (Pl. Opp. at 10; Counterstatement, ¶77; Pl. Dec., ¶11).

3

> Obviously, as a seller of insurance, GEICO is responsible for making proper payment on claims made under the policies it sells. **While GEICO could presumably contract the handling of claims to an outside company that might be engaged in such a business, GEICO chooses to handle claims in-house. This does not make the company engaged in the claims adjustment business.** The handling of claims is simply one of the operations conducted by GEICO as a part of servicing its insurance business.

*Id.* (emphasis added). As the *Harper* Court recognized, the heart of a company's business cannot be a function easily contracted out to a vendor. Here, GfK actually did outsource the "production" work at issue to vendors, and thus it is more clear that GfK was not in the business of "producing" market research studies. (Pl. Dec., ¶18).

### 2.   Plaintiff's primary duty was not production work.

Although Plaintiff concedes that vendors, and not GFK, produced the market research data, she nevertheless contends she was "on the producing side" (Pl. Dec., ¶3) of the administrative/production dichotomy. However, she has not identified a single task of hers that *produced* anything, and she testified that she was not typically involved in producing the reports. (Def. 56.1, ¶48). In fact, Plaintiff agrees her primary duty was "the management of various market research studies," (Pl. Opp. at 10), a fact echoed throughout her declaration.[5]

Plaintiff's opposition papers make clear that her work was directly related to GfK's "management or general business operations," rather than production. Plaintiff admits she worked in <u>four</u> of the function areas forth in the DOL regulations: budgeting, quality control, research, and computer network and IT administration.[6] (Pl. Dec., ¶31). She also identifies several specific tasks that fall within these and other operational areas, including "handling invoices, working on budget, quality checking the data and releasing the data internally," vendor

---

[5] *See* Pl. Dec., ¶¶4, 11, 16, 17, 22, 30, 31..
[6] Although Plaintiff asserts she was involved in computer network and IT administration "sporadically," she testified she spent approximately 35% of her time as a senior research manager on IT project management and administering the automotive client portal. (Def. 56.1, ¶36).

4

management, researching "anomalies in [GfK's] surveys" and "data issues," and drafting and implementing rules and processes for the Image study. (*Id.* at ¶¶14, 18, 25, 24, 30).

Plaintiff claims this work was not related to the "management or general business operations" of GfK because it pertained to specific projects she managed, rather than the company as a whole. However, an employer's "general business operations" includes work that affects business operations to a substantial degree, even if the work is "related to operation of a particular segment of the business." *DiFilippo v. Barclays Capital, Inc.*, 552 F. Supp. 2d 417, 422 (S.D.N.Y. 2008). Plaintiff admits her work resulted in significant operations-side improvements to the "multi-million dollar" Image study (Def. 56.1, ¶¶ 34, 50), such as reducing the budget, increasing revenue, reducing processing timelines, simplifying sampling, reducing the complexity of the quota structure and reducing vendor costs. (*Id.* at ¶¶73-76). Thus, she has not, and cannot, dispute that these improvements affected business operations substantially.

### 3. There is no legal support for Plaintiff's position.

Plaintiff primarily relies on *Reich v. N.Y.*, 3 F.3d 581 (2d Cir. 1993) and *Dalheim v. KDFW-TV*, 918 F.2d 1220 (5th Cir. 1990) to support her argument that her work was "production." *Reich* and *Dalheim* (a Fifth Circuit case that is not controlling here) were respectively decided fifteen and twenty-four years ago, long before the Secretary of Labor updated the federal regulations implementing the FLSA (*see* 69 Fed. Reg. 22143 (April 23, 2004)). Her reliance on these cases is therefore misplaced because they were decided under the pre-2004 regulations, which do not apply here.[7]

Nonetheless, *Reich* and *Dalheim* are not analogous to this matter. In *Reich*, the Second

---

[7] Although the cases cited by Plaintiff were decided under the pre-2004 regulations, Plaintiff also asks this Court to consider a statement from President Obama "directing the Secretary of Labor to update the overtime regulations." (Opp. Br. at 6). Yet, Plaintiff also asserts (correctly) that the C.F.R. provisions implementing the FLSA must be accepted by the Court and given the force and effect of law. (Opp. Br. at 5). This Court must decide this motion based on the current regulations, and not the pre-2004 regulations or Plaintiff's speculation as to future regulations.

Circuit found that defendant BCI was in the "law enforcement business" and the primary duty of the plaintiff investigators was to conduct, or "produce," criminal investigations. *Reich*, 3 F.3d at 587. Similarly, *Dalheim* involved whether news segment *producers* were involved in the *production* of news products. *Dalheim* 918 F.2d at 1229. Unlike the investigators and the producers, there is no evidence that Plaintiff produced anything, and, as set forth above, the undisputed facts demonstrate her work consisted of administrative functions.

In finding the *Dalheim* producers were non-exempt, the Fifth Circuit noted "their responsibilities begin and end with the ten-to-twelve minute portion of the newscast they are working on." Plaintiff's opposition to this motion demonstrates that her study management responsibilities extended far beyond the producers' role. She asserts that it was her "job to make the study more efficient and accurate and to speed up turning the data into results" and "to identify what the study needed to accomplish and propose ways to proceed to meet that goal, as well as to identify obstacles to the goal and propose ways to overcome them" (Pl. Dec. at ¶¶17, 29). She cannot compare herself to the *Dalheim* producers or the *Reich* investigators who played no such role in the operation of their employers' businesses.

In sum, Plaintiff has not, and cannot, establish that a genuine issue of material fact exists regarding whether her work was directly related to GfK's management or general business operations.

### B. Plaintiff's Primary Duty Required the Exercise of Discretion and Independent Judgment With Respect to Matters Of Significance

Plaintiff has also failed to create a genuine issue of material fact regarding her exercise of discretion and independent judgment with respect to matters of significance. Plaintiff attempts to defeat summary judgment by claiming she did not exercise independent discretion and judgment because she was not a "decision-maker" (Pl. Opp. at 2; Pl. Dec., ¶¶8, 15). However, it is

6

indisputable that actual decision making is not required to satisfy the exemption. *See* 29 C.F.R. § 541.202(c); *Klein v. Torrey Point Group, LLC*, No. 12 Civ. 1190, 2013 U.S. Dis. LEXIS 152875, at *21 (S.D.N.Y. Oct. 23, 2013). Plaintiff's concessions that she made recommendations to management regarding "what our objectives should be" and "resolving problems that arose in the Image Barometer Study" is precisely the type of discretion and independent judgment contemplated by the DOL regulations. (Pl. Dec., ¶¶25, 32); *see* 29 C.F.R. § 541.202(c) (example of "management consultant who has made a study of the operations of a business and who has drawn a proposed change in organization"). And, as discussed in GfK's moving brief, Plaintiff's testimony concerning the "decision-making process" she followed "frequently" in various circumstances exemplifies "the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered" described by the regulations. 29 C.F.R. § 541.202(a). Nonetheless, Plaintiff exercised independent decision-making power with respect to her quality assurance work. As she testified, she did not need approval to release data, including anomalies, if she determined the data could be explained by logical terms or market activity, and she often released data segments at night and over the weekends with no supervision at all.[8] (Def. 56.1, ¶85).

Plaintiff also seeks to avoid summary judgment by arguing that she used "automated audit tools and follow[ed] established procedures" in certain tasks and therefore lacked independent discretion and judgment. (Pl. Opp. at 12). Other than audit form, which Plaintiff reviewed to identify anomalies that needed to be researched (Def. 56.1, ¶¶81-82), Plaintiff has not, and cannot, articulate any standard processes or tools that allegedly removed independent

---

[8] Plaintiff claims in her declaration that she did not have the authority to determine "what to do about anomalies that appeared in the studies [she] was overseeing" (Pl. Dec., ¶14). However, she cannot create an issue of fact in this regard by contradicting her sworn deposition testimony. *See, e.g., Hayes*, 84 F.3d at 619. In any event, Plaintiff does not dispute that she made recommendations with respect to anomalies and data issue resolution based on her research and investigation, which establishes she exercised discretion and independent judgment.

7

discretion and judgment from her work. This is because Plaintiff's quality assurance duties were "not merely a matter of rote application leading to an inevitable result." *Harper*, 980 F. Supp. 2d at 392 (claims adjusters exercised discretion and independent judgment, despite use of manuals and procedures, by evaluating the facts of particular cases and determining what questions to ask). As in *Harper*, when researching the anomalies and other data issues, Plaintiff had to evaluate the facts of each situation to determine whether an anomaly could be explained using logical terms or market activity. (Def. 56.1 at ¶¶82-84, 87, 89). She initiated research on her own and evaluated the methods of investigation and market data factors to consider. (Pl. Dec., ¶16; Def. 56.1 at ¶¶84, 85, 89). Plaintiff also attempts to argue that her drafting of budgets was formulaic (Pl. Dec., ¶32) but she concedes she "applied logic" and reduced the budget with more accurate, detailed, researched estimates and methodology and efficiency changes. (Def. 56.1 at ¶105, Def. Reply 56.1 ¶105). Thus, there is no evidence that Plaintiff's research and analysis followed a well-established procedure.

With respect to whether Plaintiff's exercise of discretion and independent judgment extended to matters of significance, Plaintiff's admissions in her testimony and declaration establish that at least six of the factors to consider, per the DOL regulations, are satisfied:

- *Whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices.*

Plaintiff does not, and cannot, dispute that in making pricing recommendations she was required her to interpret management policies or operating practices. (*See* Def. 56.1 at ¶¶93-97.)

- *Whether the employee carries out major assignments in conducting the operations of the business.*

Plaintiff concedes she carried out major assignments, such as the Stat Pack project and various projects related to the Image study. (Pl. Opp. at 13). However, she argues that, because those assignments related to specific studies, they were not related to the "operations of the

8

business." As discussed above, Plaintiff's work need not pertain to GfK's business operations at the highest level to be exempt. Plaintiff's major assignments, such as her work on the Stat Pack project or her role in developing the Image Planning Process Commandments, involved GfK's operations, rather than production. (*See, e.g.,* Def. 56.1 at ¶121) (the stat pack project required, among other things, identifying viable technical solutions, submitting and obtaining approval on a budget, reaching out to vendors, and making recommendations on vendor selection).

- *Whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to a particular segment of the business.*

Plaintiff admits her work on various Image related projects, such as the Quota Reduction and I2 analysis, simplified and streamlined processes, increased efficiency, and lowered costs. (Def. 56.1 at ¶¶73-77). She concedes her work affected GfK's business, but mischaracterizes her work as improvements to the "product." (Pl. Opp. at 13). Her conclusory statement is contradicted by her deposition testimony that her work on these projects affected operations such as vendor costs, turnaround timeline, and eliminating redundancies. (Def. 56.1, ¶76).

- *Whether the employee is involved in planning long or short-term business objectives.*

Plaintiff admits she planned and budgeted for the future IT needs of the company. (Pl. Opp. at 13; Def. 56.1, ¶117). An example of her planning is contained in the October 13, 2011 email she sent to Brian Etchells, which laid out various potential IT improvements and a proposed budget for those improvements. (Def. 56.1, ¶117). Plaintiff also admits that it was her "job to make the [Image] study more efficient and accurate and to speed up turning the data into results." (Pl. Dec., ¶17). She cannot dispute that this is a long or short term business objective.

- *Whether the employee provides consultation or expert advice to management.*

Plaintiff admits she provided "recommendations" to management regarding "resolving

9

problems" and "what our objectives should be" for the Image Barometer Study. (Pl. Dec., ¶¶25, 32; Pl. Opp. at 13). Although "expert advice" is not required to satisfy this factor, her opinion that it would be "farfetched" to refer to her as an expert is belied by her testimony that "senior managers" sought her assistance in "emergency situations" for computer and IT advice. (Def. 56.1, ¶86; Pl. Dec., ¶31).

- *Whether the employee investigates and resolves matters of significance on behalf of management.*

Plaintiff concedes she investigated and resolved issues that arose within the studies she managed and on other "unruly projects."[9] (Pl. Opp. at 14; Def. 56.1, ¶102). She also admits that senior managers asked her to investigate emergency data issues and questions. (Def. 56.1, ¶86). Plaintiff has acknowledged that she worked on multi-million dollar studies (*Id.* at ¶¶34, 50), and she admits that her work in investigating and resolving issues had a significant effect on those studies. (Pl. Opp. at 14). She therefore cannot dispute that her investigation and resolution of these issues pertained to matters of significance, particularly when aggregated together. *See Harper*, 980 F. Supp. 2d at 393 (the aggregate of claims adjusted demonstrated significance).

## CONCLUSION

For all the foregoing reasons, GfK respectfully requests that this Court grant summary judgment and dismiss Plaintiff's Complaint in its entirety.

Date:   July 11, 2014
        New York, New York

                                              s/ Craig R. Benson
                                              Craig R. Benson
                                              Meredith L. Kaufman

---

[9] Plaintiff's assertion that her work on the "power sports" study was "one exception" contradicts her deposition testimony. There were multiple times she was "brought in to assist with an unruly project." (Def. 56.1 at ¶102).